**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL CASE NO.  22-61-DLB-EBA**

**MOSHE LEHRER**                                                                                                    **PLAINTIFF**

v.                                        **MEMORANDUM OPINION AND ORDER**

**J & M MONITORING, INC., and**                                                                        **DEFENDANTS**
**JAMES A. PATTON**

* * * * * * * * * * * *

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. # 71).  Plaintiff having filed his Response (Doc. # 75), and Defendants having filed their Reply (Doc. # 76), this Motion is now ripe for review. For the following reasons, Defendants' Motion is **granted in part and denied in part.**

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

This case concerns the terms of an agreement setting forth Plaintiff's investment in Defendants' business.  Plaintiff is Moshe Lehrer, a private investor.  (Doc. # 71-1 at 1). Defendant James A. Patton is the sole owner of Defendant J&M Monitoring, a complete environmental service company.  (Doc. # 1 ¶ 1).

Defendant Patton began seeking financing for his business, J&M Monitoring, after suffering heart attacks in 2017 and 2018.  (Doc. # 71-2 at 7-8).  In November 2019, Patton met with Lehrer to discuss an investment of capital into J&M Monitoring.  (*Id.* at 9).  On November 21, 2019, Patton and Lehrer drafted an agreement regarding this investment.

1

The short agreement stated Plaintiff would make three distributions to J&M as follows: (1) a $45,000 payment on or before Thursday, November 21, 2019; (2) a $35,000 payment on or before Thursday, January 2, 2020; and (3) a $35,000 payment on or before Monday, February 3, 2020, for a grand total of $115,000. (Doc. # 1 ¶ 26). In exchange, Defendant Patton would transfer 50% of his interest in J&M to Plaintiff Lehrer. (*Id.* ¶ 27). After this agreement was reached, Defendant Patton added Plaintiff to J&M's Citizens Bank account as a partner. (*Id.* ¶ 28).

From November 2019 to January 2020, Plaintiff made multiple payments to J&M Monitoring totaling $109,000. (*Id.* ¶ 29-33). However, Plaintiff alleges the Defendants were not honoring their responsibilities under the agreement. (*Id.* ¶ 37). Therefore, Plaintiff did not make the final February 2020 payment of $6,000. (*Id.*). Plaintiff alleges that Defendants then improperly removed Plaintiff from the J&M bank account. (*Id.* ¶ 39). Plaintiff further alleges that "Defendant J&M maintained a second corporate bank account at Citizens which was not disclosed to the Plaintiff" which was used to "hide the money," "Defendant Patton is operating the business for his own personal gain, to the detriment of the Plaintiff," and "Defendant Patton is paying himself compensation while paying the Plaintiff nothing despite the parties agreement to the contrary." (*Id.* ¶ 40-53).

In his Complaint, Plaintiff asserts six claims for relief: breach of contract, breach of fiduciary duty, conversion and theft, and common law fraud as to Defendant Patton and equitable claims of demand for an accounting and unjust enrichment as to both Defendants. (Doc. # 1). Defendants move for summary judgment on all claims. (Doc. # 71).

## II.   ANALYSIS

### A.   Standard of Review

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). This "may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case." *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

To defeat a motion for summary judgment, the non-moving party "must make an affirmative showing with proper evidence." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). In deciding a motion for summary judgment, the Court must look at the evidence "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

3

B.     Choice of Law

Federal courts in diversity cases apply the substantive law of the state in which the court sits, *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)), including that state's choice-of-law rules, *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Kentucky has different choice-of-law rules for cases that sound in tort versus those that sound in contract.  *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (E.D. Ky. 2013) (citing *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009)).  For tort claims, Kentucky law will apply if there are "significant contacts— not necessarily the most significant contacts—with Kentucky." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972).  For contract claims, Kentucky law will apply the Restatement's "most significant contacts" test.  *Saleba*, 300 S.W.3d at 180–81 (citing Restatement (Second) of Conflict of Laws (1971).  In all cases, "there is a strong preference in Kentucky for applying Kentucky law." *Wells Fargo Fin. Leasing, Inc.*, 970 F. Supp. 2d at 707.

Here, applying Kentucky law is appropriate.  For both the tort and contract claims, Kentucky law applies because the parties met in Pikeville, Kentucky to discuss the terms of the agreement.  (*See* Doc. # 71-2 at 9); *see Bell v. Kokosing Indus., Inc.*, No. CV 19-53-DLB-CJS, 2020 WL 4210701, at *12 (E.D. Ky. July 22, 2020) ("most significant contacts" test met where the contract was negotiated, signed, and performed in Kentucky).  Because the contract "most significant contacts" test is met, the lower standard for tort claims is met as well.  Because the parties do not dispute which law applies, and "Kentucky appears to have the 'most significant contacts' to the facts

4

underlying [Plaintiff's] alleged injuries, the Court will apply Kentucky law to the substantive issues without belaboring the choice of law analysis." *Cutter v. Ethicon, Inc.*, No. CV 5:19-443-DCR, 2020 WL 109809, at *4 (E.D. Ky. Jan. 9, 2020).

### C.     Discussion

#### 1.     Breach of Contract

"To prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citing *Barnett v. Mercy Health Partners–Lourdes, Inc.,* 233 S.W.3d 723, 727 (Ky.App.2007)).  Defendants first argue Plaintiff cannot establish the first element: the existence of a contract.  (Doc. # 71-1 at 4).  To show existence of a contract, Plaintiff must prove "offer and acceptance, full and complete terms, and consideration." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (citations omitted).  "For the terms to be considered complete they must be 'definite and certain' and must set forth the 'promises of performance to be rendered by each party.'" *Id.* (quoting *Kovacs v. Freeman,* 957 S.W.2d 251, 254 (Ky. 1997)).  Defendants argue there is still no certainty as to who the parties to the contract are and that there was no meeting of the minds as to the essential terms of the contract.  (Doc. # 71-1 at 5-6).

The 2019 Agreement in its entirety is as follows:

> This agreement sets forth the mutual agreement of James A. Patton DBA J&M Monitoring, Inc. located at 251 Tollage Creek Road, Pikeville, KY 41501 and Moshe Lehrer DBA TGVZG, 4020 Galt Ocean Drive, Fort Lauderdale Fl (sic) 33308 regarding the transfer of 50% of J&M Monitoring, Inc.  Both parties may be referred to herein as "Party" individually or as "Parties" mutually.  The parties are executing this agreement to enable and facilitate the negotiation and execution of a final binding agreement between the Parties.

5

>  Conditions:
>
>  1. TGVZG is not responsible for any debt incurred before November 21st 2019.
>  2. By January 1st a minimum of $70,000.00 in cash reserve for the purpose of MCA debt. With an additional $35,000 in 45 days thereafter.
>
> Accordingly, the Parties acknowledge the investment currently being made by TGVZG into the business and ensure vested ownership after the investment of the money.

(Doc. # 71-4). The document was signed by James A. Patton, Owner, J&M Monitoring and Moshe Lehrer, Owner, TGVZG, and notarized. (*Id.*). Regarding this document, Defendants state in their Motion that:

> Although neither party has been able to produce a second page of the November 21, 2019, Document, there was purportedly a signed distribution schedule attached as a second page to the document. The Plaintiff has confirmed the investment distribution schedule in its Complaint, alleging that "On November 21, 2019, the Plaintiff and Defendant entered into an agreement whereby Plaintiffs would make three distributions to J&M as follows: (1) $45,000 payment on or before Thursday November 21, 2019; (2) $35,000 payment on or before Thursday, January 2, 2020; and (3) $35,000 payment on or before Monday, February 3, 2020." (Doc. #1, Complaint, Paragraph 26).

(Doc. # 71-1).

Defendants first argue that even at the close of discovery, "there is still no certainty as to who the parties to the contract even are." In support of this argument, Defendants point to the fact that it is unclear based on Plaintiff's deposition testimony whether Plaintiff was the owner of TGVZG at the time he signed the 2019 Agreement. (See Doc. # 71-1 at 5). However, Defendants have not cited any case that supports the assertion that this would be enough to render the contract terms indefinite. And finding none, the Court concludes that a lack of clarity as to the parties' titles or affiliations is not enough to render this contract unenforceable on this basis. While there is some confusion between

6

affidavits and deposition testimony as to whether the Plaintiff entered this agreement in his individual capacity or in his capacity as owner of TGVZG (*See* Doc. # 31 at 2, Doc. # 71-3 at 5; Lehrer Deposition; Page 17), the Defendants do not clarify in their Motion what functional difference this would have made at the time the agreement was entered. Either way, this is a question of fact that the Court cannot answer at this time. See *Sparkman v. Consol Energy, Inc.,* 470 S.W.3d 321, 328 (Ky. 2015), *as corrected* (Sept. 24, 2015) (referring to plaintiff's business alias as a "factual allegation"). Given this dispute of fact, the Court cannot grant summary judgment on this basis.

Defendants then argue there was no meeting of the minds as to the essential terms of the contract. (Doc. # 71-1 at 6). It is well-settled that a "meeting of the minds" is a requirement to form an enforceable contract. *GEICO Marine Ins. Co. v. Monette*, 438 F. Supp. 3d 763, 768 (E.D. Ky. 2020) (citations omitted). This manifestation of mutual assent is "the most essential factor" in determining the existence of a binding contract. *Cent. Bank v. Gill*, No. 2011-SC-000442-DG, 2013 WL 5436257, at *5 (Ky. Sept. 26, 2013) (quoting *Utilities Electrical Machine Corp. v. Joseph E. Seagram & Sons*, 300 Ky. 69, 187 S.W.2d 1015, 1018 (1945)).

Defendants argue that the "actions and communications" of the parties prove there was no meeting of the minds. (Doc. # 71-1 at 6). More specifically, Defendants argue there was "clear confusion" between the parties as to "each other's respective obligations." (*Id.*). Defendant Patton understood the agreement to mean that Plaintiff would be vested an ownership interest in J&M Monitoring *after* the three payments totaling $115,000 were completed. (*Id.* at 7) (referencing last sentence in agreement stating, "the Parties acknowledge the investment currently being made by TGVZG into

7

the business and ensure vested ownership after the investment of the money.") (emphasis added).  Plaintiff argues that Defendants' argument is one of an ambiguous term within the contract, rather than a meeting of the minds issue.  (Doc. # 75 at 6).

Here, there is a dispute of material fact as to whether there was a meeting of the minds regarding the 2019 Agreement.  A meeting of the minds issue arises where there is not a clear offer or acceptance of the offer.  *See Utilities Elec. Mach. Corp. v. Joseph E. Seagram & Sons*, 300 Ky. 69, 75, 187 S.W.2d 1015, 1018 (1945).  Generally, courts will conclude there was no meeting of the minds "when the full and complete essential terms of the contract are not agreed upon," *Cent. Bank*, 2013 WL 5436257, at *5, and the parties had only made "an agreement to agree" to a future final contract.  *See Stevens v. Stevens*, 798 S.W.2d 136, 139 (Ky. 1990).  While the 2019 Agreement does include the language "The parties are executing this agreement to enable and facilitate the negotiation and execution of a final binding agreement between the Parties," there is no indication that another final agreement was reached.  (*See* Doc. # 71-4).  There is also no indication that this final agreement was planned or expected at all.

In fact, Defendant Patton performed on the 2019 Agreement.  He concedes as much in his Motion when he states he "understood that after Lehrer made the 3 distributions to allow J&M to work through the Underground Storage Tank projects, Lehrer would then be vested with an ownership of the Company." (Doc. # 71-1 at 7).  Defendant Patton cannot now argue that there was no contract when he concedes he was operating under this agreement as a contract.  And there is nothing in the record that either party has pointed to that would indicate that this Agreement was just part of their initial

8

negotiations or "an agreement to agree" to a future final contract. *See Stevens,* 798 S.W.2d at 139.

In support of his argument that there was a misunderstanding as to the essential terms of the contract, Defendant Patton refers to "a series of smaller side deals with the Plaintiff" that were "outside of the original intentions." (Doc. # 71-1 at 8). But these additional deals and transfers of funds do not necessarily render the original agreement unenforceable. Defendant Patton then goes on to argue that:

> Among the largest of disputes related to the lack of definite terms, is when 50% ownership of J&M was to vest or otherwise be transferred to Lehrer. Although the November 21, 2019, Document giving rise to the contractual dispute is far from definite and clear, the final sentence of the document may be considered the only unambiguous language located on the document. It states, "Accordingly the Parties acknowledge the investment currently being made by TGVZG into the business and ensure vested ownership after the investment of the money." The plain reading of this language indicates that ownership would transfer after the investment of the money referred to in the distribution schedule that was contemplated.

(Doc. # 71-1 at 9-10). Although Defendant Patton's Motion seeks summary judgment based on a lack of contract, this argument seems to signal to the Court that Defendant Patton believes there was in fact a contract, but that he just does not believe he breached it. However, the parties have not briefed the issue of breach[1], and therefore the Court will not address it. Considering all these facts in the light most favorable to Plaintiff as the non-moving party, a reasonable jury could conclude there was an enforceable contract between the parties.

---

[1] Defendants briefly reference Plaintiff's nonperformance if the Court concludes an enforceable contract exists. (See Doc. # 71-1 at 11). However, this does not factor into the analysis of whether summary judgment is proper on Plaintiff's claims, and Defendants have not brought breach of contract counterclaims against Plaintiff that the Court is aware of.

Defendants then argue that even if the Court concludes a contract existed, Plaintiff cannot show damages. (Doc. # 71-1 at 10). In support of this argument, Defendants point to evidence that the payments to Defendants did not come from the Plaintiff. (*Id.*). Rather, they came from "Ischa Hecht or Rivkah Friedrich-Hecht" and "TGVZG, LLC." (*See* Doc. # 71-7). Defendants do not provide a case citation to assist the Court in its analysis of the effect these payments would have on Plaintiff's ability to prove damages. However, even if the payments were from other accounts and this renders those damages unenforceable, Plaintiff's damages also include his vested interest in part ownership in J&M Monitoring, as was referenced in the 2019 Agreement. Therefore, Plaintiff's contract claim cannot be dismissed on this basis.

Summary judgment is proper if the claim is "so one-sided that one party must prevail as a matter of law." *Alexander*, 576 F.3d at 558 (quoting *Anderson*, 477 U.S. at 251-52). For the all the reasons stated above, the Court concludes resolution of the contract claim is not so "one-sided" and a genuine dispute of material fact exists. Therefore, Defendants' Motion for Summary Judgment is **denied** as to Plaintiff's breach of contract claim.

### 2.  *Breach of Fiduciary Duty and Conversation*

On Plaintiff's breach of fiduciary duty claim, Defendants' argument in its entirety is that because no valid contract was formed, Defendant Patton had no fiduciary duty that he could have breached, and that Plaintiff has set forth no factual evidence to support such a claim. (Doc. # 71-1 at 12). In Response, Plaintiff states only that "Mr. Lehrer performed under the 2019 Agreement until Mr. Patton breached his fiduciary duty to Mr. Lehrer." (Doc. 75 at 7). Because the Plaintiff does not address Defendants' arguments

regarding the factual sufficiency of the fiduciary duty claim and has not made an "affirmative showing with proper evidence" as is required to oppose a motion for summary judgment, *see Alexander*, 576 F.3d at 558, Plaintiff's breach of fiduciary duty claim will be dismissed.

Next, as to Plaintiff's conversion and theft claims, Defendants' argument in its entirety is that Plaintiff's conversion and theft claims must also fail because "there is no factual basis in the record in support of the allegation that 'Patton converted J&M's tangible and intangible property without authorization . . . .'" (*Id.*). Plaintiff's response is just as brief, stating at the end of the section addressing contract damages that "Mr. Lehrer's Conversion and Theft claims also have merit for the reasons described above." (Doc. # 75 at 7). Again, Plaintiff has not carried his burden to show factual evidence of this claim in his opposition of Defendants' Motion and this claim must also be dismissed.

For these reasons, Defendants' Motion for Summary Judgment is **granted** as to Plaintiff's breach of fiduciary duty and conversion and theft claims.

### 3.    *Common Law Fraud*

To allege a claim of fraud, Plaintiff must prove the following elements by clear and convincing evidence: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)). Additionally, a claim of fraud must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). The Sixth Circuit has interpreted this to mean a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

11

(3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982-83 (6th Cir. 2017) (citations omitted).  Defendants argue Plaintiff cannot meet this standard.  (*See* Doc. # 71-1 at 12).

In support of a claim of fraud, Plaintiff pled in his Complaint that "Defendant Patton made overt and material fraudulent statements in regard to the Cash Flow and Bill Payment Schedules and concealed material information as part of an effort to entice Plaintiff to invest over $100,000 to enrich the Defendants to the detriment of Plaintiff." (Doc. # 1 ¶ 66).  However, Plaintiff does not state what these statements were or what material information was concealed.  And in response to Defendants' Motion for Summary Judgment, Plaintiff just adds references to "fraudulent AR reports," a "fraudulent scheme," and "Mr. Patton's fraudulent misrepresentation of J&M's documents."  The only specific information Plaintiff points to is his deposition testimony that "[Defendant Patton] would say he's getting 100K in the account.  I would log into the Citizen's account and there was maybe ten, 20K."  (Doc. # 75-1 at 3; Lehrer Depo. Page 20).

Additional citations to Plaintiff's deposition testimony show the conclusory nature of these allegations.  (*See* Doc. # 75 at 8).  Plaintiff asserts in his Response that "Mr. Patton manipulated the AR reports to make them look higher than what was in the bank account. (*Id.*).  The deposition testimony cited in support of this allegation is as follows:

> I had access to the bank account.  So you log into the bank.  You look at the AR report.  If they don't match up, he defrauded it.  Like that, I mean, he makes the AR report like he stated earlier.  He makes it on QuickBooks.  He makes it on a sheet so he could write whatever he wants but if you log into the bank statements, I mean, numbers don't lie.  So if we—if we have e-mails of all the AR in Texas, if we get the bank statements, we could show you in five minutes that they were false. I'm locked out of the account, so I don't have those statements anymore, but I mean, that's what happened.

(Doc. # 75-1 at 5; Lehrer Depo. Page 40). At this point in the litigation, the Court would expect these emails and bank statements to have been produced during discovery. However, Plaintiff makes no reference to any additional evidence of fraud and the discovery period has closed.

The Complaint does not meet the pleading standard for fraud and now on summary judgment, after the close of discovery, Plaintiff has still not provided enough facts to the Court to show he can meet the elements of a fraud claim to oppose Defendants' Motion. Therefore, Defendants' Motion for Summary Judgment is **granted** as to Plaintiff's common law fraud claim.

### 4. *Unjust Enrichment*

To prevail on a claim of unjust enrichment, Plaintiff must prove "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Kentucky Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012). This includes an "element of injustice." *Bogan v. Finn*, 298 S.W.2d 311, 314 (Ky. 1957). Defendants argue Plaintiff did not come forward with sufficient factual evidence to prove these elements, nor can Plaintiff show he is entitled to any additional payment because he recovered more money than he had invested. (*See* Doc. # 71-1 at 15). Plaintiff responds that he has provided sufficient factual evidence of this claim through his deposition testimony where he stated he was to receive a salary and 50 percent of the commissions as a 50 percent owner. (*See* Doc. # 75 at 9).

However, Plaintiff's Response shows that what he really seeks is performance of the contract. And generally, "unjust enrichment is unavailable when the terms of an

13

express contract control." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017) (internal quotation and citations omitted). Where there is an express contract, the Court may find unjust enrichment an appropriate equitable remedy "when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." *Id.* (citing Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c (Am. L. Inst. 2011)). Plaintiff has not shown that he is seeking restitution beyond what he may have been entitled to under the contract, discussed *supra*. Therefore, Defendants' Motion for Summary Judgment is **granted** as to Plaintiff's unjust enrichment claim.

### 5.   *Demand for Accounting*

Defendants seek dismissal of all claims but do not address Plaintiff's claim of Demand for Accounting. (*See* Doc. # 1 ¶¶ 60-64). Plaintiff also does not address this claim in his brief. The Court notes that "[a]n accounting claim is based on a theory of unjust enrichment because an accounting mandat[es] the return of any benefit received as a result of a breach of fiduciary duty." *S. Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052-GNS, 2018 WL 922379, at *6 (W.D. Ky. Jan. 23, 2018) (internal quotations and citations omitted). Additionally, "[a]n accounting is considered an 'extraordinary remedy' that 'is available only when legal remedies are inadequate.'" *Id.* (quoting *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)).

Because the Court has granted Defendant's Motion as to Plaintiff's breach of fiduciary duty claim, and the Court concludes that Plaintiff's legal remedies pursuant to his remaining contract claim are adequate, *see Herzig v. Oncology/Hematology Care, Inc.*, No. CIV.A.3:97CV-795-S, 2001 WL 1775378, at *6 (W.D. Ky. May 24, 2001),

Defendants' Motion for Summary Judgment is **granted** as to Plaintiff's demand for accounting.

III. **CONCLUSION**

Accordingly, **IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Doc. # 71) is **GRANTED IN PART AND DENIED IN PART**. Specifically:

  a. The Motion is **GRANTED** as to Plaintiff's claims of fraud, conversion, theft, unjust enrichment, and demand for accounting; and

  b. The Motion is **DENIED** as to Plaintiff's claim of breach of contract.

(2) The parties shall file a Joint Status Report **within thirty (30) days from the date of this Order** indicating whether they would be amenable to pursuing mediation, either privately or court-facilitation, on Plaintiff's remaining claim.

This 20th day of May, 2024.



Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\PikeCivil\2022\22-61 MOO re MSJ.docx